Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000430
09-AUG-2019
02:11 PM

NO. CAAP-16-0000430

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

FIRST HAWAIIAN BANK,
Plaintiff-Appellee,
v.
ASSOCIATION OF APARTMENT OWNERS OF SUN RISE, INC.,
by its Board of Directors,
Defendant-Appellant,
and
WADE ALLEN HAMLIN,
Defendant-Appellee,
and
JOHN DOES 1-10, JANE DOES 1-10, DOE PARTNERSHIPS 1-10,
DOE CORPORATIONS 1-10, DOE ENTITIES 1-10, and
DOE GOVERNMENTAL UNITS 1-10,
Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 13-1-03115)

SUMMARY DISPOSITION ORDER
(By: Ginoza, C.J., and Fujise and Reifurth, JJ.)

This case arises out of an action brought by Plaintiff-Appellee First Hawaiian Bank ("FHB") against former owner Defendant-Appellee Wade Allen Hamlin, seeking to foreclose upon a mortgage lien on Hamlin's unit in the Sun Rise condominium project in ʻEwa Beach, Hawaiʻi ("the Unit"). In November 2013, FHB initiated judicial foreclosure proceedings in the Circuit Court of the First Circuit ("Circuit Court")[1] alleging that Hamlin defaulted on his mortgage payments. Defendant-Appellant

---

[1]    The Honorable Bert I. Ayabe presided.

Association of Apartment Owners of Sun Rise, Inc. ("the AOAO") was named as a defendant in the case because it held an interest in the Unit as the result of a non-judicial foreclosure it had initiated on the Unit in April 2013 with regard to Hamlin's alleged failure to pay Unit-related AOAO fees.

The foreclosure decree and related judgment were never appealed. Instead, post-confirmation of sale proceedings focused on the scope of the Circuit Court's powers to control and direct when title transfers to the subsequent purchaser at the conclusion of a foreclosure sale, and when the subsequent purchaser of a foreclosed unit is deemed to be responsible for paying assessments and fees. The AOAO appeals from the following two post-judgment orders entered by the Circuit Court:

(1) The January 13, 2016 "Order Granting in Part and Denying in Part Plaintiff's Motion Re: Order Granting Plaintiff First Hawaiian Bank's Motion for Confirmation of Sale, Directing Distribution of Proceeds, for Deficiency Judgment, Writ of Possession and Disposal of Personal Property, Filed November 24, 2014, Filed Herein on April 6, 2015, for [1] Determination that Defendant Association of Apartment Owners of Sun Rise, Inc. Is Not Entitled to Seek its Attorneys' Fees and Costs Against the Subsequent Purchaser; and, [2] for a Civil Contempt Sanction Against Defendant Association of Apartment Owners of Sun Rise, Inc." ("January 13, 2016 Order"); and

(2) The April 28, 2016 "Order Denying Defendant Association of Apartment Owners of Sun Rise, Inc.'s Motion for Reconsideration of the Order Granting in Part and Denying in Part Plaintiff's Motion Re: Order Granting Plaintiff First Hawaiian Bank's Motion for Confirmation of Sale, Directing Distribution of Proceeds, for Deficiency Judgment, Writ of Possession and Disposal of Personal Property, Filed November 24, 2014, Filed Herein on April 6, 2015, for [1] Determination that Defendant Association of Apartment Owners of Sun Rise, Inc. Is Not Entitled to Seek its Attorneys' Fees and Costs Against the Subsequent Purchaser; and, [2] for a Civil Contempt Sanction Against Defendant Association of Apartment Owners of Sun Rise, Inc., Filed Herein on January 25, 2016" ("April 28, 2016 Order").

I.    Background

        In January 2006, Hamlin purchased the Unit, along with a 2.3% interest in all common elements of the AOAO's condominium project "Sun Rise - Phase H."  Hamlin obtained a loan from FHB, secured by a note and mortgage on the Unit.  On April 1, 2013, due to Hamlin's failure to pay the maintenance fees on the Unit, the AOAO completed a non-judicial foreclosure of the Unit by Quitclaim Deed, conveying the Unit to itself.  The AOAO thereafter rented out the Unit to a new tenant, and collected the rental proceeds.  On October 28, 2013, Mortgage Electronic Registration Systems, Inc., as FHB's nominee, assigned the mortgage to FHB.

        On November 25, 2013, due to Hamlin's default on his mortgage payments, FHB filed a complaint for foreclosure against the AOAO and Hamlin (collectively "Defendants").  FHB filed a motion for summary judgment and a decree of foreclosure ("MSJ") against Defendants.  AOAO took no position regarding the foreclosure, but stated that it was equitable for the AOAO to continue collecting rent from the Unit because it "incurred substantial time, effort and expense to secure title and possession."  FHB asserted that if the AOAO was allowed to continue collecting rent, the AOAO should be required to provide an accounting of that rent.  The hearing on FHB's MSJ took place on August 13, 2014.

        On September 16, 2014, the Circuit Court entered the order granting FHB's MSJ ("Foreclosure Decree") and corresponding judgment.  The Foreclosure Decree stated that the AOAO would continue to maintain possession of the Unit, and directed the AOAO to "file an accounting of the rental income collected, its application to delinquent maintenance fees and costs, and any excess rental income remaining prior to the hearing to confirm the sale of the [Unit]."

        On November 24, 2014, the Commissioner conducted a public auction for the Unit during which FHB was the sole and successful bidder.  That same day, FHB filed its motion for confirmation of sale ("Confirmation Motion"), which the AOAO did not oppose.  At the December 18, 2014 hearing on the Confirmation

3

Motion, the Circuit Court orally granted the motion, but because the AOAO still had not submitted the accounting of rental proceeds as directed by the Foreclosure Decree, the court set a status conference to address the matter, and eventually ordered supplemental briefing by FHB and the AOAO to address the issue of excess rental proceeds. On April 6, 2015, the Circuit Court entered the order granting FHB's Confirmation Motion ("Confirmation Order") and the corresponding judgment. The order stated that upon delivery of the Unit to FHB or its nominee, all parties would be barred from any interest in the Unit except for "a proper lien for unpaid special assessments levied pursuant to HRS § 514B-146(g), (h), and (i)[.]"

On June 10, 2015, the AOAO sent a letter to FHB, referencing authority under HRS section 514B-146(g) and requesting payment of a five-month special assessment for unpaid amounts between November 1, 2012, and April 1, 2013 ("June 10, 2015 Letter"). On June 17, 2015, FHB filed a motion which, in relevant part, sought to clarify that the AOAO was entitled to nothing in the way of a special assessment from FHB under HRS section 514B-146 ("Clarification Motion"). FHB additionally requested an extension of time to close the foreclosure sale because the issue of the amount of special assessments owed to the AOAO was contributing to delays in closing the foreclosure sale. On July 30, 2015, the AOAO withdrew its request for payment of the special assessment, but asserted its right to collect assessments and common expenses as of February 16, 2015 pursuant to HRS section 514B-146(b).

At the hearing on the Clarification Motion, the AOAO reiterated that it was a mistake to request a special assessment pursuant to its June 10, 2015 Letter, but maintained that it was entitled to collect continuing maintenance fees beginning "60 days after the hearing on the Order Confirming Sale, which was February 16, 2015[.]" On August 24, 2015, the Circuit Court entered the order granting the Clarification Motion, extending the close of sale, and finding that the amount of the special assessment that AOAO could claim under HRS section 514B-146 was "zero" ("Clarification Order").

4

On September 1, 2015, the Commissioner's Quitclaim Apartment Deed ("Commissioner's Deed") was recorded in the State of Hawai'i Office of Assistant Registrar, thereby conveying title of the Unit from the Commissioner to the Secretary of Veterans Affairs ("VA"), as nominee for FHB. On September 2, 2015, the AOAO made a demand on escrow for an additional payment in order to release the lien on the Unit, part of which the AOAO claimed should be paid by the subsequent purchaser (i.e., VA) in the form of its attorneys' fees and costs incurred in the foreclosure action. On October 1, 2015, the AOAO stated, in an email sent to FHB, that it was only seeking attorneys' fees and costs incurred after February 16, 2015.

On October 20, 2015, FHB filed a post-judgment motion in which it requested that the Circuit Court issue a post-judgment order (1) declaring that the AOAO was not entitled to an award of attorneys' fees and costs and (2) sanctioning the AOAO for intentionally failing to follow the terms of the Confirmation Order by first seeking a special assessment, and then later, seeking to levy its attorneys' fees and costs against the subsequent purchaser.

The Circuit Court entered the January 13, 2016 Order, granting in part and denying in part FHB's October 20, 2015 post-judgment motion. The Circuit Court agreed that the AOAO was not entitled to an award of attorneys' fees and costs, but declined to sanction the AOAO. The AOAO filed a motion for reconsideration regarding the January 13, 2016 Order ("Reconsideration Motion"). On April 28, 2016, the Circuit Court entered an order denying the AOAO's Reconsideration Motion. On May 26, 2016, the AOAO timely appealed from the January 13, 2016 Order and the April 28, 2016 Order.

II. Points of error.

On appeal, the AOAO alleges that the Circuit Court (A) reversibly erred when it determined that the VA became the owner of the Unit as of September 1, 2015, and therefore, was responsible for all fees and assessments beginning on that date; and (B) erred in denying its Reconsideration Motion.

5

III. Discussion

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we affirm.

(A) In its first point of error, the AOAO asserts that the Circuit Court reversibly erred by failing to apply the plain and unambiguous language of HRS section 514B-146(b), which establishes when a mortgagee or other purchaser takes title to a unit after a mortgage foreclosure, to the facts of this case. Specifically, the AOAO argues that the VA must be deemed to hold title to the Unit as of February 16, 2015 (sixty days after the hearing on the Motion to Confirm), not as of September 1, 2015 (when the instrument of conveyance was recorded), and subsequently must pay the common expenses and assessments (including attorneys' fees and costs) due and owing to the AOAO from February 16, 2015 until the closing. In the alternative, the AOAO argues that even if the VA did not take title until September 1, 2015, the VA and FHB waived and/or are estopped or are precluded by quasi-estoppel from making any objections to paying assessments for AOAO's attorneys' fees and costs. The AOAO's arguments are without merit.

HRS section 514B-146 (Supp. 2013) provides, in relevant part, that:

> (b) . . . [W]hen the mortgagee of a mortgage of record or other purchaser of a unit obtains title to the unit as a result of foreclosure of the mortgage, the acquirer of title and the acquirer's successors and assigns shall not be liable for the share of the common expenses or assessments by the association chargeable to the unit that became due prior to the acquisition of title to the unit by the acquirer. The unpaid share of common expenses or assessments shall be deemed to be common expenses collectible from all of the unit owners, including the acquirer and the acquirer's successors and assigns. *The mortgagee of record or other purchaser of the unit shall be deemed to acquire title and shall be required to pay the unit's share of common expenses and assessments beginning:*
>
> (1) Thirty-six days after the order confirming the sale to the purchaser has been filed with the court;
>
> (2) Sixty days after the hearing at which the court grants the motion to confirm the sale to the purchaser;

> (3)    Thirty days after the public sale in a
> nonjudicial power of sale foreclosure conducted
> pursuant to chapter 667; or
>
> (4)    Upon the recording of the instrument of
> conveyance;

whichever occurs first[.]

Haw. Rev. Stat. § 514B-146(b) (emphasis added). A mortgagee of record or other purchaser of the unit, however, will not be deemed to have acquired title under HRS section 514B-146(b)(1)-(3) if transfer of title is delayed as specified in the statute and either of the following limiting-events occur:

> [1] *when a person who appears at the hearing on the motion or a party to the foreclosure action requests reconsideration of the motion or order to confirm sale,* [2] *objects to the form of the proposed order to confirm sale,* [3] appeals the decision of the court to grant the motion to confirm sale, or [4] the debtor or mortgagor declares bankruptcy or is involuntarily placed into bankruptcy.

*Id.* (emphasis added). If one of these limiting-events and the specified delay occurs, "the mortgagee of record or other purchaser of the unit shall be deemed to acquire title upon recordation of the instrument of conveyance." *Id.*

The AOAO argues that none of the limiting-events occurred, and that therefore, the date that VA acquired title to the Unit was the earliest date under HRS section 514(b)(1)-(3), which was February 16, 2015, sixty days after the hearing at which the Circuit Court granted the Confirmation Motion. FHB, on the other hand, maintains that at least one of the limiting-events occurred—either by the AOAO's conduct in delaying the closing of the sale,[2/] which FHB construes as an "object[ion] to the form of the proposed order to confirm sale," or by effectively forcing FHB to file its Clarification Motion, which FHB characterizes as a motion for reconsideration, before the AOAO conceded that its demand for fees in its June 10, 2015 Letter was inappropriate—and that therefore, the date that the VA

---

[2/]    FHB identifies several instances as examples of delay: (1) the AOAO's failure to timely provide accounting of the rent it collected after acquiring title to the Unit, (2) the AOAO's objection to FHB's supplemental memo in support of its Motion for Confirmation in which the AOAO challenged FHB's assertion that there was excess rental income collected by the AOAO, and (3) the AOAO's demand for a six-month special assessment in its June 10, 2015 Letter.

acquired title was when the conveyance instrument was recorded. As both the AOAO and FHB were parties to the foreclosure action, the dispositive issue is whether the AOAO's request for a special assessment or FHB's request in its Clarification Motion to declare that the AOAO was entitled to nothing by way of a special assessment constituted either an "object[ion] to the form of the proposed order to confirm sale" or a "request[] [for] reconsideration of the motion or order to confirm sale," under HRS section 514B-146(b).

In its January 13, 2016 Order, the Circuit Court found in relevant part that

> AOAO's *attempt to seek a special assessment* after entry of the Order Confirming Sale [] was *tantamount* to either a reconsideration of the Order Confirming Sale or an objection to the form of the Order Confirming Sale, and that [] AOAO should not be entitled to collect common expenses and assessments that resulted from its own actions in delaying the closing of this foreclosure sale. As such, and pursuant to Hawaii Revised Statutes § 514B-146(b), the subsequent purchaser was deemed to have acquired title to the [Unit] as of September 1, 2015, the date on which the Commissioner's Quitclaim Deed was recorded.

(Emphasis added.) The Circuit Court echoed this determination in its April 28, 2016 Order, ruling that the AOAO's request for special assessment delayed the closing and resulted in FHB filing its Clarification Motion. In effect, the Circuit Court determined that substantively the AOAO's June 10, 2015 Letter constituted either an "object[ion] to the form of the proposed order to confirm sale" or a "request[] [for] reconsideration of the motion or order to confirm sale," thereby triggering one of the limiting-events and establishing that the VA was "deemed to acquire title upon recordation of the [Commissioner's Deed]" under HRS section 514B-146(b). The Circuit Court additionally determined that FHB's Clarification Motion was a motion for reconsideration of the Confirmation Order, and therefore, its ruling under HRS section 514B-146(b) was appropriate.

The AOAO's argument notwithstanding, the Circuit Court never characterized the AOAO's June 10, 2015 Letter as a *motion* for reconsideration or a formally filed-objection. Rather, the Circuit Court characterized the AOAO's *action* of attempting *to seek special assessment* after the Confirmation Order as

*tantamount* to reconsideration or an objection to the form of the Confirmation Order. The Circuit Court's application of the statute is in accord with its plain language, the starting point of statutory interpretation. *First Ins. Co. of Hawaii v. A&B Props.*, 126 Hawai'i 406, 414, 271 P.3d 1165, 1173 (2012) ("[T]he fundamental starting point for statutory-interpretation is the language of the statute itself." (quoting *State v. Wheeler*, 121 Hawai'i 383, 390, 219 P.3d 1170, 1177 (2009))). Under HRS section 514B-146(b), to toll the date that the subsequent purchaser "acquire[s] title," "a party to the foreclosure action" needs to "*request[] reconsideration* of the motion or order to confirm sale" or "*object*[] to the form of the proposed order to confirm sale." Haw. Rev. Stat. §514B-146(b) (emphasis added). Here, the AOAO's attempt to seek an admittedly improper special assessment, when the Confirmation Order was silent on the subject—and in fact provided that all parties would be barred from any interest in the Unit except for "a *proper* lien for unpaid special assessments levied pursuant to HRS § 514B-146(g), (h), and (i)"—could fairly be construed as requesting reconsideration or objecting to the Confirmation Order. *See Black's Law Dictionary* 1464 (10th ed. 2014) (defining "reconsider" as "[t]o discuss or take up (a matter) again"); *id.* at 1240 (defining "object" as "[t]o state in opposition").

Furthermore, FHB never contended that its Clarification Motion was a *motion* for reconsideration. Rather, FHB stated, "The *request* by [FHB] in the Clarification Motion *was expressly a request* for the [Circuit] Court *to reconsider* the Order Confirming Sale and the amount of the special assessment lien that [the] AOAO was entitled to claim as part of the closing of the foreclosure sale." (Emphasis added.) As explained above, the Confirmation Order did not address the AOAO's special assessment lien, which can be construed as an omission in the order. Therefore, it was reasonable to conclude that FHB's request that the Circuit Court reconsider the amount of the AOAO's special assessment lien in its Clarification Motion—which the Circuit Court noted was filed in response to the AOAO's June 10, 2015 Letter—could be construed as "request[ing] reconsideration of the

9

motion or order to confirm sale" under HRS section 514B-146(b). *See Black's Law Dictionary* at 1170 (defining "motion for reconsideration" as "[a] party's request that the court allow another hearing of a . . . motion . . . to consider an alleged . . . omission in the court's judgment or opinion").

Therefore, the Circuit Court did not err in determining that the VA acquired title to the Unit as of September 1, 2015, the date on which the Commissioner's Deed was recorded, because the AOAO's request for special assessment constituted either "object[ing] to the form of the proposed order to confirm sale" or "request[ing] reconsideration of the motion or order to confirm sale" under the statute, and/or FHB's Clarification Motion constituted "object[ing] to the form of the proposed order to confirm sale" under the statute. *See* Haw. Rev. Stat. § 514B-146(b). Consequently, the Circuit Court also did not err in determining that the VA was not responsible for any of the Unit's fees or common expenses and assessments prior to that date. *See id.*

In the alternative, the AOAO argues that even if the Circuit Court did not err in its application of HRS section 514B-146(b) and title to the Unit did not transfer to the VA until September 1, 2015, the VA's uncontested payment of maintenance fees, late fees, and interest incurred from February 16, 2015 operated as a waiver of any objection to payment for the attorneys' fees and costs incurred during that period. The AOAO further argues that FHB is estopped from objecting to the VA's payment of these assessments because it "admitted that the VA paid these amounts 'in order to facilitate closing and avoid future litigation.'" If FHB or the VA wanted to contest the payment of assessments for the AOAO's attorneys fees and costs, the AOAO maintains that FHB or VA needed to follow the appropriate procedure under HRS section 514-146(d).

Preliminarily, we decline to address the estoppel or quasi-estoppel argument. This appears to be the first time the AOAO has raised the argument, and the AOAO fails to provide a citation as to where in the record it preserved the issue for appeal. The argument is therefore deemed waived. *See Asato v.*

*Procurement Policy Bd.*, 132 Hawai'i 333, 354 n.22, 322 P.3d 228, 249 n.22 (2014) (citing *State v. Moses*, 102 Hawai'i 449, 456, 77 P.3d 940, 947 (2003) ("As a general rule, if a party does not raise an argument at trial, that argument will be deemed to have been waived on appeal.") (brackets omitted)); Haw. R. App. P. 28(b)(4) (requiring that an appellant identify in his or her opening brief where in the record on appeal an objection was raised to the trial court and noting that "[p]oints not presented in accordance with this section will be disregarded"). We proceed then to the merits of the AOAO's remaining argument.

> A waiver "'may be expressed or implie[d],' and '[i]t may be established by express statement or agreement, or by acts and conduct from which an intention to waive may be reasonably inferred.'" *Wilart Assocs. v. Kapiolani Plaza, Ltd.*, 7 Haw. App. 354, 359-60, 766 P.2d 1207, 1210-11 (1988) (citations omitted) (brackets in original).

> Generally, waiver is defined as an intentional relinquishment of a known right, a voluntary relinquishment of rights, and the relinquishment or refusal to use a right. *Association of Owners of Kukui Plaza v. Swinerton & Walberg Co.*, 68 Haw. 98, 108, 705 P.2d 28, 36 (1985). To constitute a waiver, there must have existed a right claimed to have been waived *and* the waiving party must have had knowledge, actual or constructive, of the existence of such a right at the time of the purported waiver. *Honolulu Fed. Sav. & Loan Ass'n v. Pao*, 4 Haw. App. 478, 484, 668 P.2d 50, 54 (1983).

> *In re Estate of Searl*, 72 Haw. 222, 226-27, 811 P.2d 828, 831 (1991) (citations omitted).

*Coon v. City & Cnty. of Honolulu*, 98 Hawai'i 233, 261, 47 P.3d 348, 376 (2002). In order to prevail, the AOAO needs to establish that: (1) there was an existing right claimed to have been waived, *and* (2) the waiving-party had knowledge, either actual or constructive, of that right at the time of waiver.

The AOAO argues that the VA's request for a payoff amount from the AOAO and the VA's subsequent payment of maintenance fees, late fees, and interest assessed from February 2015 to September 2015 operated as a waiver. Citing to correspondence from the VA to the AOAO in which the VA requested a payoff letter to facilitate closing of the Unit, the AOAO maintains that this conduct indicates the VA's willingness to pay off any amounts due and owing to the AOAO. The VA's request for a payoff letter does not explicitly identify the right to contest

payment of any and all attorneys' fees and costs. Rather, it states that the VA needed to know, in relevant part, "attorney fees, if applicable, for Procurement costs of the payoff letter." Likewise, the VA's payment of maintenance fees, late fees, and interest assessed from February 2015 to September 2015 does not establish that the VA would also pay assessments in the form of attorneys' fees and costs. Put another way, the AOAO's payment of maintenance fees, late fees, and interest does not amount to an intentional relinquishment of its right to contest payment of the subject attorneys' fees and costs. The AOAO argues that assessment for attorneys' fees and costs are no different from any other type of assessment against the Unit and should have been paid at closing. However, the AOAO offers no legal authority in support. Accordingly, the AOAO fails to show that the VA's conduct constituted a waiver of any objections to paying assessments for the attorneys' fees and costs incurred by AOAO. *Coon*, 98 Hawai'i at 261, 47 P.3d at 376.

(B) In its second point of error, the AOAO asserts that the Circuit Court erred in denying its Reconsideration Motion. Beyond this, the AOAO provides no further argument as to how or why the Circuit Court abused its discretion—the appropriate standard of review, *Cho v. State of Hawai'i*, 115 Hawai'i 373, 381, 168 P.3d 17, 25 (2007) (*quoting Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co.*, 100 Hawai'i 97, 110, 58 P.3d 608, 621 (2002) ("The trial court's ruling on a motion for reconsideration is reviewed under the abuse of discretion standard."))—in denying its motion. We therefore decline to address the matter further. *See Kakinami v. Kakinami*, 127 Hawai'i 126, 144 n.16, 276 P.3d 695, 713 n.16 (2012) (citing *In re Guardianship of Carlsmith*, 113 Hawai'i 236, 246, 151 P.3d 717, 727 (2007) (noting that this court may "disregard a particular contention if the appellant makes no discernible argument in support of that position"). Accordingly, the Circuit Court did not abuse its discretion in denying AOAO's Reconsideration Motion.

IV.  Conclusion

Therefore, IT IS HEREBY ORDERED that the January 13, 2016 Order and the April 28, 2016 Order entered by the Circuit Court of the First Circuit are affirmed.

DATED:  Honolulu, Hawai'i, August 9, 2019.

On the briefs:

R. Laree McGuire,
Linda E. Ichiyama, and
Cheryl A.K. Fraine
(Porter McGuire Kiakona &
Chow, LLP)
for Defendant-Appellant.

Jonathan W.Y. Lai,
Thomas J. Berger, and
Tracey Lynn Ohta
(Watanabe Ing LLP)
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge

13